UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
DEUTSCHE BANK NATIONAL TRUST
COMPANY, AS TRUSTEE UNDER THE
POOLING AND SERVICING AGREEMENT
DATED AS OF APRIL 1, 2004, SECURITIZED
ASSET BACKED RECEIVABLES LLC TRUST
2004-NC1,

                          Plaintiff,

                v.

ROHAN TAIT A/K/A ROHAN O. TAIT;
NEW YORK STATE DEPARTMENT OF
TAXATION AND FINANCE;
NEW YORK CITY ENVIRONMENTAL
CONTROL BOARD; NEW YORK CITY
PARKING VIOLATIONS BUREAU;
"JOHN DOE #1" through "JOHN DOE #12,"
the last twelve names being fictitious and unknown to
plaintiff, the persons or parties intended being the
tenants, occupants, persons or corporations, if any,
having or claiming an interest in or lien upon the
Subject Property described in the Complaint,

                    Defendants.
--------------------------------------------------------------------X

**REPORT AND RECOMMENDATION**

25-CV-1562
(Vitaliano, J.)
(Marutollo, M.J.)

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

      Plaintiff Deutsche Bank National Trust Company as Trustee under the Pooling and

Servicing Agreement dated as of April 1, 2004, Securitized Asset Backed Receivables LLC Trust

2004-NC1 brings this foreclosure action against Defendants Rohan Tait, also known as Rohan O.

Tait ("Tait"); New York State Department of Taxation and Finance ("DOTF"); New York City

Environmental Control Board ("ECB"); New York City Parking Violations Bureau ("PVB")

(collectively, "Defaulting Defendants"); as well as "John Doe #1" through "John Doe #12" ("John

Doe Defendants").  Plaintiff seeks to foreclose a first mortgage lien encumbering the real property

at 2169 Strauss Street (Borough 3, Block 3584, Lot 16) in Brooklyn, New York (the "Property").

*See* Dkt. No. 1 ¶ 1, Dkt. No. 1-1 at 2;[1] Dkt. No. 22.

Currently pending before this Court, on a referral from the Honorable Eric N. Vitaliano, United States District Judge, is Plaintiff's motion for default judgment against Defaulting Defendants. Dkt. No. 22; Text Order, dated Sep. 8, 2025. For the reasons set forth below, the undersigned respectfully recommends that Plaintiff's motion be granted in part and denied in part.[2]

## I.    Relevant Background

### A.    Factual Allegations

The following facts are taken from the Complaint, Plaintiff's motion, and the attachments filed in support of Plaintiff's motion, and are assumed to be true for purposes of this motion. *See Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187-89 (2d Cir. 2015) (noting that a court is "required" to accept the allegations in the complaint as true "in deciding whether a default judgment is appropriate"); *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (holding that in light of defendant's default, a court is required to accept all of plaintiff's factual allegations as true and draw all reasonable inferences in plaintiff's favor).

On or about December 4, 2003, Tait executed, acknowledged, and delivered a note (the "Note") to New Century Mortgage Corporation ("New Century"), wherein Tait "promised to repay the sum of $340,000.00[,] in monthly payments[,] interest, taxes, assessments, leasehold payments or ground rents (if any), together with hazard and mortgage insurance." Dkt. No. 1 ¶ 10; *see also* Dkt. No. 1-5. The Note was "indorsed in blank[.]" Dkt. No. 1 ¶ 15; Dkt. No. 1-5. As security for the re-payment of the Note, Tait executed a mortgage ("the Mortgage") in favor of New Century,

---

[1] Page citations are to the ECF-stamped page numbers unless otherwise noted.

[2] Olive McLeod, a judicial intern who is a second-year law student at Emory University School of Law, is gratefully acknowledged for her assistance in the research of this Report and Recommendation.

2

which was recorded in the Office of the New York City Register against the Property on or about August 12, 2004.  Dkt. No. 1 ¶ 11; *see also* Dkt. No. 1-6.

On or about November 25, 2009, New Century assigned the Mortgage to Plaintiff.  Dkt. No. 1 ¶ 13; Dkt. No. 1-8.  Plaintiff is the owner and holder of the Note and Mortgage.  Dkt. No. 1 ¶ 14.  As noted in the Complaint, "Plaintiff, directly or through an agent, maintains physical possession of the original Note," which was delivered to Plaintiff or its agent prior to the commencement of the present action.  *Id.* ¶ 15.  Specifically, Plaintiff received physical possession of the original Note on October 5, 2015, and possessed the Note when Plaintiff commenced this action.  Dkt. No. 22-9 ¶ 7.  When Plaintiff took possession of the Note, the Note contained an indorsement in blank, and additionally, both the Note and Mortgage were assigned to Plaintiff via written Assignment of Mortgage.  *Id.*; *see also* Dkt. Nos. 1-8; 22-15 (assignment of mortgage).

On or about April 1, 2011, the Mortgage was modified by a Home Affordable Modification Agreement (the "Loan Modification Agreement").  Dkt. Nos. 1 ¶ 12; Dkt. No. 1-7.  The Loan Modification Agreement modified the principal balance of the Note.  Dkt. No. 1-7 at 5.  The new modified principal balance was $383,836.18.  *Id.*  The first payment on the new principal balance was due on May 1, 2011.  *Id.* at 7.  Tait was to make monthly payments of principal and interest beginning on that date.  *Id.* at 6-7.

Tait breached his obligation under the Note and Mortgage, as modified, by failing to make payments when due, beginning with the payment due on October 1, 2024.  Dkt. No. 1 ¶ 17; Dkt. No. 22-9 ¶ 8.  By notice dated November 6, 2024, Tait was informed that his "home loan is 36 days and $21,010.68 dollars in default" and he is "at risk of losing [his] home."  Dkt. No. 22-17 at 3.  The notice also stated that "[i]f [Tait] ha[s] not taken any actions to resolve this matter within 90 days from the date this notice was mailed, we may commence legal action against [Tait] (or

3

sooner if [Tait] cease[s] to live in the dwelling as [his] primary residence.)" *Id.* at 4.  The notice was mailed via first class mail and certified mail to the Property on or about November 7, 2024 by Plaintiff's servicer, PHH Mortgage Corporation ("PHH").  Dkt. No. 22-9 ¶¶ 1, 10.

A Notice of Default, dated November 19, 2024, was mailed via first class mail to the Property on or about November 19, 2024 by PHH.  *Id.* ¶ 9; Dkt. No. 22-16.  The Notice of Default stated that "[m]ortgage payments on [the subject] account are past due, which has caused a default under the terms of the Mortgage," and provided that $21,050.80 was past due as of November 19, 2024.  Dkt. No. 22-16 at 4.  It also states that "[i]n order to cure the default, payment for the entire total amount past due, plus any amount(s) becoming due in the interim, must be received on or before [December 24, 2024], via the addresses or methods listed on the payment remittance information section included in this notice." *Id.*

Tait did not cure his default, and Plaintiff commenced this action to foreclose on a mortgage encumbering the Property on March 20, 2025.  Dkt. No. 1 ¶¶ 1, 17.  On that date, the Mortgage had an "unpaid principal balance of $232,202.25 and a deferred balance of $41,238.24, plus interest, taxes, assessments, leasehold payments or ground rents (if any), together with hazard and mortgage insurance, if applicable." *Id.* ¶ 17.  By reason of the default, Plaintiff "declared the balance of the principal indebtedness to be immediately due and owing." *Id.* ¶ 19.  Plaintiff alleged that it is due "the principal sum of $232,202.25 plus interest thereon from September 1, 2024, in addition to those accumulated late charges and those recoverable monies advanced by Plaintiff and/or Plaintiff's predecessor-in-interest on behalf of [Tait] together with all costs, including but not limited to, attorneys' fees, disbursements, and further allowances provided pursuant to the underlying loan documents and applicable law in bringing any action to protect the Plaintiff's

interest in the Property." *Id.* ¶ 20. On March 28, 2025, Plaintiff filed a Notice of Pendency with the Kings County Clerk. Dkt. Nos. 23 at 6; 23-3. Tait remains in default. Dkt. No. 22-9 ¶ 8.

### B.     Procedural History

As noted above, Plaintiff commenced this action on March 20, 2025. Dkt. No. 1. Defendants DOTF, ECB, and PVB each hold judgment liens subordinate to Plaintiff's mortgage on the Property. *See id.* at 1 ¶¶ 4-6; Dkt. Nos. 1-2 – 1-4. In addition, Plaintiff named John Does #1 through #12 as Defendants to "designate any and all tenants, occupants, persons, corporations or other entities, if any, having or claiming an interest in or lien upon the Property or any part thereof, which is subject to the lien of the Mortgage." Dkt. No. 1 ¶ 7.

On March 21, 2025, the undersigned entered a Scheduling Order for a telephonic initial conference on June 11, 2025. Text Order, dated Mar. 21, 2025. The parties were also directed to complete the proposed Discovery Plan and Scheduling Order and file it no later than June 6, 2025. *Id.*; Dkt. No. 7. Defendants ECB and PVB were served with process on March 27, 2025. Dkt. Nos. 12-13. Defendant DOTF was served with process on April 7, 2025. Dkt. No. 11. Tait was served with process at the Property and by first class mail on April 12, 2025 and April 16, 2025, respectively. Dkt. No. 10. On May 27, 2025, Plaintiff notified Defendants of the initial conference scheduled for June 11, 2025 and provided them with a copy of the docket in this case. Dkt. Nos. 14-15.

The parties did not file a proposed Discovery Plan and Scheduling Order by the June 6, 2025 deadline, and the undersigned *sua sponte* extended the deadline to June 10, 2025. Text Order, dated Jun. 9, 2025.

On June 10, 2025, Plaintiff filed a request for a certificate of default as to Defaulting Defendants. Dkt. No. 16. The undersigned directed that the Clerk of Court not enter a certificate

of default at that time, and ordered Plaintiff to file a letter by June 17, 2025, providing an update as to,

> (a) Defendants' proper service [addresses], and the grounds on which Plaintiff makes those assertions; (b) whether Plaintiff has, in its possession, any contact phone number, email address, or any other property address(es) for such Defendants; and (c) what efforts, if any, Plaintiff has made to determine such Defendants' proper service addresses or contact information, including any email addresses and/or phone numbers.

Text Order, dated Jun. 10, 2025. On the same day, the undersigned adjourned the June 11, 2025 initial conference *sine die*. Text Order, dated Jun. 10, 2025.

On June 17, 2025, Plaintiff filed a letter stating that Plaintiff's loan servicer "routinely communicates with Mr. Tait at [the Property] address and a [L]exis search performed by [Plaintiff's counsel's] office confirmed that this address is a good address for Mr. Tait." Dkt. No. 17 at 1. The "[L]exis search did reveal another potential address . . . for Defendant [Tait]," but Plaintiff's "attempts to serve him at that address were unsuccessful." *Id.* at 1; *see also id.* at 11 (affirmation of attempted service). Plaintiff's records also revealed an email address for Tait as well as a phone number. *Id.* at 1.

On June 18, 2025, the undersigned directed Plaintiff to serve Tait with a copy of the docket sheet at the provided email address, and to call Tait's telephone number to alert him to this action, including the case name and number. Text Order, dated Jun. 18, 2025. The undersigned also directed Plaintiff "file a letter by June 23, 2025 confirming compliance with this Order" and providing "the information sought in the Court's June 10, 2025 Text Order for all the defaulting defendants, as originally directed." *Id.*

On June 25, 2025, Plaintiff advised the Court that it "attempted to reach Mr. Tait by phone twice and did leave him a message advising him of this action, the title of the action, and the case number," and "also emailed Mr. Tait with the name and case number for the action and forwarded

6

him a copy of the docket." Dkt. No. 18 at 1.  In addition, Plaintiff provided service addresses for the other named Defendants.[3]  *Id.* at 1-2.  Plaintiff also noted that the John Doe Defendants were "named to represent potential new lienholders, judgment creditors, other parties with an interest in the mortgaged premises which might not have been revealed in Plaintiff's initial title search." *Id.* at 1 n.1.  No such parties, however, were "identified or served and Plaintiff therefore intends on discontinuing the action as against these John Doe defendants." *Id.*

The undersigned directed Plaintiff to file a status report "regarding any communications with Defendants by July 10, 2025." Text Order, dated Jun. 25, 2025.  On July 10, 2025, Plaintiff reported that it had not received any communication from Tait and, accordingly, requested a certificate of default as to Tait. Dkt. No. 19.  On July 11, 2025, the undersigned granted Plaintiff "leave to seek a certificate of default from the Clerk of Court by July 18, 2025." Text Order, dated Jul. 11, 2025.

On July 17, 2025, Plaintiff again requested a certificate of default as to Defaulting Defendants.  Dkt. No. 20.  The Clerk of Court issued the certificate of default on July 21, 2025. Dkt. No. 21.

On September 5, 2025, Plaintiff filed the motion for default judgment and judgment of foreclosure and sale against all named Defendants.  Dkt. No. 22.

On March 28, 2026, the undersigned ordered Plaintiff to file a letter addressing whether Plaintiff "is seeking default judgment against Defendants [DOTF, ECB, and PVB,]" and "is requesting that the interests and liens held by Defendants DOTF, ECB, and PVB be extinguished."

---

[3] Plaintiff stated that it served Defendant ECB and the "New York City Department of Finance" at the Office of the Corporation Counsel, "100 Church Street, New York, New York 10007." Dkt. No. 18 at 1. The undersigned, however, construes this as a scrivener's error.  Pursuant to the Affirmations of Service, it appears that Plaintiff served Defendants ECB and PVB at 100 Church Street, New York, New York 10007. *See* Dkt. Nos. 12; 13.

Text Order, dated Mar. 28, 2026.  On April 10, 2026, the undersigned ordered Plaintiff to address five "additional deficiencies in Plaintiff's Complaint and default motion papers," in addition to the issues identified in the Court's March 28, 2026 order.  Text Order, dated Apr. 10, 2026.  The undersigned ordered Plaintiff to show cause as to why the Court should not dismiss the action without prejudice for lack of subject matter jurisdiction or deny its motion without prejudice.  *Id*. The undersigned also directed Plaintiff to "clarify[] the issues as to the DOTF, ECB, and PVB" and to provide clarification regarding the various deficiencies identified in the Court's April 10, 2026 Text Order.  *Id.*

On April 18, 2026, Plaintiff filed a letter response to the Court's March 28, 2026 and April 10, 2026 orders.  Dkt. No. 26.  Regarding the issue raised in the Court's March 28, 2026 order, Plaintiff clarified that it seeks to extinguish the subordinate liens held by Defendants DOTF, ECB, and PVB and seeks default judgment against those same defendants.  *Id.* at 2.  Plaintiff added that Defendants DOTF, ECB, and PVB were served with Plaintiff's motion for default judgment.[4]  Dkt. Nos. 26; 7-1

Regarding the issues raised in the Court's April 10, 2026 Text Order, Plaintiff first stated that the Court should not dismiss the action given that the Court has subject matter jurisdiction in this case, as there is complete diversity between the Plaintiff and Defaulting Defendants.  *Id*. at 2-4.  Second, Plaintiff filed a copy of the New York Real Property Actions and Proceedings Law ("RPAPL") § 1303 notice served on Tait.  Dkt. Nos. 27-5; 27-6.  Third, Plaintiff filed a copy of the RPAPL § 1320 "special summons" required in a residential foreclosure case.  Dkt. Nos. 26, at 4; 27-7, 27-8.  Fourth, Plaintiff provided proof that Plaintiff filed a copy of the Complaint along

---

[4] Plaintiff also served Defendants DOTF, ECB, and PVB with a copy of the April 10, 2026 order.  Dkt. No. 25.

with the Notice of Pendency pursuant to RPAPL § 1331 and the New York Civil Procedure Law and Rules ("CPLR") § 6511(a).  Dkt. Nos. 26 at 4, 27-4.  Fifth, Plaintiff provided a copy of the Certificate of Merit required under CPLR § 3012-b(a).[5]  Dkt. Nos. 26, 27-9.

On April 18, 2026, Plaintiff also filed a motion for an extension of time to file a copy of the Pooling and Servicing Agreement ("PSA"), and the undersigned granted Plaintiff's motion on the same day.  Dkt. No. 28; Text Order, dated Apr. 18, 2026.  On April 25, 2026, Plaintiff filed a copy of the PSA.  Dkt. Nos. 29, 29-2.

On June 18, 2026, in response to a Court order, Plaintiff addressed why service was proper on DOTF under CPLR § 307(2).  *See* Dkt. No. 30.

To date, Defaulting Defendants have not appeared or moved to vacate the entries of default.

## II.    **Discussion**

### A.    **Standing, Service, Jurisdiction, and Venue**

The Court "must . . . satisfy itself that it has subject matter and personal jurisdiction before rendering judgment against defendants."  *Dumolo v. Dumolo*, No. 17-CV-7294 (KAM) (CLP), 2019 WL 1367751, at *4 (E.D.N.Y. Mar. 26, 2019) (citing *Covington Indus., Inc. v. Resintex A.G.*, 629 F.2d 730, 732 (2d Cir. 1980) ("A judgment entered against parties not subject to the personal jurisdiction of the rendering court is a nullity.")).

#### i.    **Standing**

As Plaintiff is not an original party to the Note, this Court will first address Plaintiff's standing to bring this foreclosure action.  *See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005) ("Because the standing

---

[5] Plaintiff filed the Certificate of Merit on April 18, 2026, rather than on March 20, 2025, due to a filing error.  Dkt. No. 26 at 5.  Notwithstanding the tardiness of the filing, the undersigned considers the Certificate of Merit here.

issue goes to this Court's subject matter jurisdiction, it can be raised *sua sponte*.").   "Under New York law, '[a] plaintiff establishes its standing in a mortgage foreclosure action by demonstrating that, when the action was commenced, it was either the holder or assignee of the underlying note.'" *E. Sav. Bank, FSB v. Thompson*, 631 F. App'x 13, 15 (2d Cir. 2015) (quoting *Wells Fargo Bank, N.A. v. Rooney*, 19 N.Y.S.3d 543, 544 (N.Y. App. Div. 2015)).   "Either a written assignment of the underlying note or the physical delivery of the note prior to the commencement of the foreclosure action is sufficient to transfer the obligation, and the mortgage passes with the debt as an inseparable incident." *Id.* (quoting *U.S. Bank, N.A. v. Collymore*, 890 N.Y.S.2d 578, 580 (N.Y. App. Div. 2009)).   "[T]o establish standing on physical possession of a note, i.e., that the plaintiff was the holder of the note, a plaintiff must show (1) possession of the note, either indorsed in blank or specifically indorsed to the plaintiff, at the time the action was commenced; and (2) that the note was received by physical delivery." *Gustavia Home, LLC v. Hoyer*, 802 F. Supp. 3d 445, 467 (E.D.N.Y. 2025) (internal quotation marks, footnote, and citations omitted).

Here, the Note was indorsed in blank, rendering it payable to the party that holds it.  Dkt. Nos. 1 ¶ 15; 22-9 ¶ 7; 1-5; *Thompson*, 631 F. App'x at 15 ("Holder status is established where the plaintiff possesses a note that, on its face or by allonge, contains an indorsement in blank or bears a special indorsement payable to the order of the plaintiff." (quoting *Wells Fargo Bank, NA v. Ostiguy*, 8 N.Y.S.3d 669, 671 (N.Y. App. Div. 2015))).  Plaintiff alleges, and files documentation to establish, that it has been in possession of the Note since at least October 5, 2015, that the Note was delivered to Plaintiff's agent, and, additionally, that it has been assigned the Mortgage since November 25, 2009, which assignment was recorded on or about January 12, 2010.  Dkt. Nos. 1 ¶¶ 13-15; 22-9 ¶ 7; 1-8; 22-15.  Plaintiff has provided copies of the Note and Mortgage, including the assignment document, as exhibits to the Complaint (Dkt. Nos. 1-5 (note); 1-6 (mortgage); 1-8

10

(assignment of mortgage)), and as attachments to the declaration in support of the present motion (Dkt. Nos. 22-12 (note); 22-13 (mortgage); 22-15 (assignment of mortgage)).

Since Plaintiff filed uncontroverted evidence that it both held and was the assignee of the Note and Mortgage when it commenced this action, the undersigned respectfully recommends that Plaintiff has standing to pursue this action. *See Thompson*, 631 F. App'x at 15-16; *see also Deutsche Bank Nat'l Trust Co. v. Tacoaman ("Tacoaman")*, No. 25-CV-1698 (MKB) (JRC), 2026 WL 498199, at *3 (E.D.N.Y. Feb. 12, 2026) (finding that since Plaintiff "has submitted uncontroverted evidence that it held the Note and Mortgage when it commenced this action . . . this Court finds that plaintiff has standing to pursue this action." (first citing *Thompson*, 631 F. App'x at 15-16; then citing *Blue Castle (Cayman) LTD v. 1767 TP Ave LLC*, No. 22-CV-9577 (DEH) (SN), 2024 WL 4135194, at *4 (S.D.N.Y. Sep. 10, 2024) ("Attachment of the Note as an exhibit to the Complaint was sufficient to establish standing since it demonstrated that the plaintiff was in physical possession of the [N]ote at the time the action was commenced." (internal quotation marks and citations omitted)); and then citing *JXB 84 LLC v. Khalil*, No. 15-CV-6251, 2017 WL 1184001, at *3 (E.D.N.Y. Feb. 17, 2017), *report and recommendation adopted*, 2017 WL 1184141 (E.D.N.Y. Mar. 29, 2017))), *report and recommendation adopted*, 2026 WL 624360 (E.D.N.Y. Mar. 5, 2026).

Therefore, the undersigned respectfully recommends that Plaintiff has demonstrated that it has standing to bring this action.

### ii.    Service of Process

"It is axiomatic that to obtain a default judgment against a defendant, the pleading must have been properly served upon him." *Freedom Mortg. Corp. v. Monteleone*, 628 F. Supp. 3d 455, 460 (E.D.N.Y. 2022) (adopting report and recommendation); *see also Joe Hand Promotions,*

11

*Inc. v. Necessary Studios, Inc.*, No. 21-CV-5551 (LDH) (RER), 2022 WL 18858972, at *3 (E.D.N.Y. Dec. 5, 2022) (quoting *Happy Homes, LLC v. Jenerette-Snead*, No. 15-CV-1788 (MKB) (RML), 2016 WL 6599826, at *3 n.10 (E.D.N.Y. Nov. 7, 2016) ("Ineffective service-of-process is a ground to deny a motion for default judgment.")), *report and recommendation adopted*, Text Order, dated Dec. 22, 2022.

Rule 4(h) of the Federal Rules of Civil Procedure, which governs service on a corporation, partnership, or association, states that an entity in a judicial district of the United States must be served "in the manner prescribed by Rule 4(e)(1) for serving an individual." Fed. R. Civ. P. 4(h)(1)(A). Rule 4(e)(1) of the Federal Rules of Civil Procedure allows for service by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." *Yang v. Fei*, No. 24-CV-5055 (RA) (KHP), 2026 WL 114933, at *2 (S.D.N.Y. Jan. 15, 2026) (citing Fed. R. Civ. P. 4(e)(1)).

A state, municipal corporation, or any other state-created governmental organization may be served by "delivering a copy of the summons and of the complaint to its chief executive officer," or "serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant." Fed. R. Civ. P. 4(j)(2)(A)-(B). Under CPLR § 307(2), service upon an agency of the state of New York shall be made in one of two ways: (1) by "delivering the summons to such officer or to the chief executive officer of such agency or to a person designated by such chief executive officer to receive service," or (2) "by mailing the summons by certified mail, return receipt requested, to such officer or to the chief executive officer of such agency, and by personal service upon the state in the manner provided by subdivision one of this section." N.Y. C.P.L.R. § 307(2). Further, under CPLR § 311(a)(2), service "upon the city of New York" must

12

be made "to the corporation counsel or to any person designated to receive process in a writing filed in the office of the clerk of New York county." N.Y. C.P.L.R. § 311(a)(2).

Here, Plaintiff properly served ECB and PVB, New York City entities, by delivering the summons and complaint to the New York City Law Department, Office of the Corporation Counsel. Dkt. Nos. 12, 13.[6]

Plaintiff also properly served DOTF, a New York State agency, by personally serving a designated agent of the DOTF at DOTF's principal office. *See* Dkt. Nos. 11, 30. On April 7, 2025, at 3:30 p.m., Plaintiff's process server served the summons and complaint by delivering a true copy to an "Office Assistant," at "W.A. HARRIMAN CAMPUS, BLDG 9, ALBANY NY 12227," and the affirmation of service contained a brief description of the Office Assistant. Dkt. No. 11. New York provides that "[t]he principal office of the Department of Taxation and Finance (except the Division of Tax Appeals or the Tax Appeals Tribunal), for purpose of serving legal process, is located at Building 9, W.A. Harriman Campus, Albany, New York 12227." N.Y. Comp. Code R. & Regs tit. 20, § 2391.2. Further, "[p]ersonal service may be made at the principal office of the department (as noted in section 2391.2 of this Part)," and "[s]elected personnel (including the receptionist on duty in the lobby) in the principal office have been designated to accept legal process on the commissioner's behalf, and such service may be made generally on

---

[6] Generally, ECB and PVB are New York City agencies, and non-suable governmental entities. *See Miss Jones, LLC v. Viera*, No. 18-CV-1398 (NGG) (SJB), 2018 WL 11467906, at *1 (E.D.N.Y. Dec. 7, 2018) (holding that the ECB is a New York City agency, a non-suable entity); *see also Golds v. City of New York*, No. 25-CV-3587 (HG), 2025 WL 1895233, at *3 (E.D.N.Y. July 8, 2025) (holding that the PVB is a non-suable entity). In the context of mortgage foreclosure actions, however, "[c]ourts regularly enter default judgment in foreclosure actions against defendants with 'nominal interests' in the relevant property, such as parties holding liens that are subordinate to the plaintiff's interest." *CIT Bank, N.A. v. O'Sullivan*, No. 14-CV-5966 (ADS) (AYS), 2016 WL 2732185, at *9 (E.D.N.Y. May 10, 2016) (Spatt, J.) (citations omitted). In such cases, state or city agencies, such as ECB and PVB, can be named as defendants. *Windward Bora, LLC v. Thompson*, No. 18-CV-1811 (NGG) (RML), 2020 WL 1242828, at *5-6 (E.D.N.Y. Mar. 16, 2020) (adopting report and recommendation, and holding that "where a state or city agency is named as a defendant, heightened pleading requirements apply" (citations omitted)). As demonstrated below, Plaintiff has met the heightened pleading requirements.

weekdays from 8:30 a.m. to 5:00 p.m." *Id.* § 2391.3.  Accordingly, service of process on DOTF was proper.  *See United States v. Calaman*, No. 15-CV-180 (NGG) (PK), 2016 WL 8213831, at *5 (E.D.N.Y. Nov. 16, 2016) ("The proof of service filed by the United States indicates that a copy of the Summons directed to [DOTF] was served on a [DOTF] employee on January 22, 2016.  The service on [DOTF] was valid under CPLR § 307(2) in that the Summons was delivered to a person designated by the [DOTF] to receive service of process," but recommending that default judgment be denied without prejudice because service of process was untimely), *report and recommendation adopted in part*, 2017 WL 462050 (E.D.N.Y. Feb. 2, 2017) (adopting the report and recommendation in part because the Government subsequently cured the service issues).

As for Tait, CPLR § 308(2) permits service of process upon an individual "by delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place, or usual place of abode" and "by mailing the summons by first class mail to the person to be served at his or her actual place of business . . . , such delivery and mailing to be effected within twenty days of each other."  N.Y. C.P.L.R. § 308(2).

Here, Plaintiff alleges that Tait's proper service address is 2169 Strauss Street, Brooklyn, New York 11212.  Dkt. Nos. 10; 27-5; 27-6.  On April 12, 2025, Plaintiff served Tait by delivering and leaving the Summons, Complaint, and RPAPL § 1303 notice, along with other documents, at Tait's address.  Dkt. Nos. 1 ¶ 3; 17.  The aforementioned documents were left with an individual at the address ("Mr. Tait," a person of suitable age (approximately 50-59 years old) and discretion)) and also mailed a copy of the Summons and Complaint to the same address on April 16, 2025.  Dkt. No. 10.

Therefore, the undersigned respectfully recommends that Defaulting Defendants were properly served.

### iii.    Subject Matter Jurisdiction

Under 28 U.S.C. § 1332(a)(1), "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states."  Plaintiff alleges subject matter jurisdiction on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1332(a).  Dkt. No. 1 ¶ 8.  Plaintiff argues that diversity jurisdiction exists because Plaintiff is a citizen of California, and Defaulting Defendants are all citizens of New York, and the amount in controversy—exclusive of interest and costs—exceeds $75,000.  *See* Dkt. No. 1 ¶¶ 2-6, 8, 17, 20.

As an initial matter, the amount in controversy is over $75,000.  Dkt. No. 1 ¶¶ 17-20 (immediately declaring the principal sum of $232,202.25 plus interest and other fees immediately due and owing).

Regarding the citizenship of the parties, Plaintiff is suing in its capacity as a trustee under the PSA.  Dkt. No. 26 ¶ 5.  A trustee's own citizenship controls for purposes of determining diversity jurisdiction only if the trustee "possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others" because that authority is what makes the trustee "a real party to the controversy."  *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461-64 (1980) ("a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy" (citations omitted)).  The Court must examine "the scope of [the trustee's] authority as delineated by the Trust Agreement."  *U.S. Bank Nat'l Ass'n as Tr. For RMAC Tr., Series 2016-CTT v. Desrosiers,* No. 17-CV-7338 (JMW), 2021 WL 5630899, at \*4 (E.D.N.Y. Dec. 1, 2021).

Here, the PSA is the controlling trust agreement and sets forth the scope of Plaintiff's authority as trustee.  *See* Dkt. No. 29-2.  Section 2.01 of the PSA conveys to Plaintiff "all the right,

15

title, and interest" to the subject loans, and Section 8.01 of the PSA provides Plaintiff with the power to enforce legal, equitable, or other remedies to enforce any rights of the trustee and certificate holders.  *Id.* at 8, 12.  Therefore, the citizenship of Plaintiff, a trustee, controls for purposes of determining diversity jurisdiction

Plaintiff is a national bank.  Dkt. No. 27-2.  "A national banking association is, for purposes of diversity jurisdiction, a citizen of the state where its main office is located as designated in its articles of association."  *Tacoaman*, 2026 WL 498199, at *4 (citing 28 U.S.C. § 1348; *Wachovia Bank v. Schmidt*, 546 U.S. 303, 318 (2006); *OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 219 (2d Cir. 2016)).  Similar to what transpired in the *Tacoaman* case, here, although Plaintiff did not initially allege in the Complaint the state in which its main office is located per its articles of incorporation, Plaintiff clarified its citizenship by filing a declaration and a printout from the Office of the Comptroller of Currency's website confirming the location of Plaintiff's headquarters, which is in Los Angeles, California.  Dkt. No. 27-2; *see also Tacoaman,* 2026 WL 498199, at *4 (finding that the same plaintiff was a citizen of California upon review of Office of the Comptroller of Currency printout and that diversity jurisdiction existed); *Melina*, 827 F.3d at 218 ("National banks are 'corporate entities chartered not by any State, but by the Comptroller of the Currency of the U.S. Treasury . . . . " (citing *Wachovia Bank*, 546 U.S. at 306)).

Accordingly, the undersigned respectfully recommends a finding that there is subject matter jurisdiction over Plaintiff's claims against Defaulting Defendants.[7]

---

[7] The Second Circuit has held that "a court *may* raise personal jurisdiction *sua sponte* when a defendant has failed to appear." *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 n.7 (2d Cir. 2010) (citation omitted).  To properly exercise personal jurisdiction, three requirements must be met: (1) plaintiff's service of process on the defendant must have been procedurally proper, (2) there must be statutory basis for personal jurisdiction that renders such service of process effective, and (3) the exercise of personal jurisdiction must comport with constitutional due process principles.  *Great Bowery, Inc. v. Royal Beauty Studio Inc.*, No. 25-CV03627 (FB) (JAM), 2026 WL 1029641, at *6 (E.D.N.Y. Apr. 16, 2026) (citations omitted).  First, as established above, all Defendants were properly served.  Dkt. No. 27-1;

16

## B.    Venue

In a mortgage foreclosure action, venue is based on the location of the mortgaged property. *See Lakeview Loan Serv., LLC v. Skeen*, Nos. 24-CV-4760 (GRB) (ST), 25-CV-3152 (GRB) (ST), 2026 WL 1080220, at *1 (E.D.N.Y. Feb. 25, 2026) ("Venue is appropriate in Central Islip as the subject property is in Nassau County."), *report and recommendation adopted*, Text Order, dated Mar. 23, 2026; *Courchevel 1850 LLC v. Haley*, No. 17-CV-241 (DLI)(RML), 2018 WL 1796275, at *1 (E.D.N.Y. Jan. 30, 2018) (adopting report and recommendation, and holding "[v]enue is proper pursuant to 28 U.S.C. § 1391, as the property at issue is located within the Eastern District of New York"); *see also CIT Bank, N.A. v. Locastro*, No. 17-CV-1701 (AMD) (JO), 2018 WL 4635728, at *1 (E.D.N.Y. Aug. 2, 2018) ("venue is proper in this district in pertinent part because the mortgaged Property is located here"), *report and recommendation adopted*, 2018 WL 4026737 (E.D.N.Y. Aug. 22, 2018).  Here, because the Property is located in Brooklyn, New York, venue is proper in this District.

Accordingly, the undersigned respectfully recommends that venue is proper in this District.

---

Dkt. No. 30.  Second, the Court may exercise general jurisdiction over DOTF, PCB, and PVB under CPLR § 301 because DOTF, PCB, and PVB are citizens of New York. *Fed. Nat'l Mortg. Ass'n v. Active Mgmt. Props. LLC*, No. 23-CV-9022 (RPK)(PK), 2025 WL 3451875, at *5 (E.D.N.Y. Mar. 14, 2025) (construing "Plaintiff's claims against ECB as against the City, which is a citizen of New York"), *report and recommendation adopted*, Text Order, dated Mar. 14, 2025.  Last, the Court can exercise general jurisdiction under CPLR § 301 over Tait because Plaintiff alleges that Tait is a citizen of New York (Dkt. No. 1 ¶ 3).  And, in an avoidance of doubt, the Court may exercise long-arm jurisdiction over Tait under CPLR § 302(4) because Tait "is the record owner of the Property" located in Brooklyn, New York.  Dkt. No. 1 ¶¶ 1, 3; *see also* N.Y. C.P.L.R. § 302(4) stating that the court may exercise personal jurisdiction over any non-domiciliary who "owns, uses or possesses any real property situated within the state").  For Tait, because he has met the contacts requirement under CPLR § 302, he meets the constitutional minimum contacts requirement. *Dow Jones & Co., Inc. v. Perplexity AI, Inc.*, 797 F. Supp. 3d 305, 331 (S.D.N.Y. 2025).  As for the reasonableness factors, given Defendants' default, the Court has not been provided "any reason why exercise of specific jurisdiction would be unreasonable." *Holiday Park Drive, LLC v. Newist Corp.*, No. 23-CV-2623 (AMD) (JMW), 2024 WL 4040351, at *8 (E.D.N.Y. Feb. 15, 2024), *report and recommendation adopted*, Text Order, dated Mar. 20, 2024.

17

### C.    Procedural Compliance with Federal Rules and Local Civil Rules

"A motion for default judgment will not be granted unless the party making the motion adheres to *all* of the applicable procedural rules." *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Eng'rs v. Allstate Mapping & Layout, LLC*, No. 22-CV-1831 (PKC) (TAM), 2023 WL 1475389, at *1 (E.D.N.Y. Feb. 2, 2023) (quoting *Century Surety Co. v. Atweek*, No. 16-CV-335 (ENV) (PK), 2018 WL 10466835, at *1 (E.D.N.Y. Jan. 9, 2018)). "Local rules have the force of law, as long as they do not conflict with a rule prescribed by the Supreme Court, Congress, or the Constitution." *Fin. Servs. Vehicle Tr. v. Osmanaj*, No. 22-CV-7491 (RPK) (CLP), 2023 WL 7000935, at *2 (E.D.N.Y. Aug. 15, 2023) (internal quotation marks and citation omitted), *report and recommendation adopted*, Text Order, dated Sep. 11, 2023.

Local Civil Rule 55.2 provides, in relevant part,

(a) In addition to following the applicable procedures in either (b) or (c) below, any party seeking a default judgment must file:

    (1) an affidavit or declaration showing that:

        (A) the clerk has entered default under Local Civil Rule 55.1;

        (B) the party seeking default judgment has complied with the Servicemembers Civil Relief Act, 50a U.S.C. § 521; and

        (C) the party against whom judgment is sought is not known to be a minor or an incompetent person . . . . .

    (2) if proceeding by motion, the papers required by Local Civil Rule 7.1, including a memorandum of law, a proposed order detailing the proposed judgment to be entered; and

    (3) a certificate of service stating that all documents in support of the request for default judgment, including the "Clerk's Certificate of Default" and any papers required by this rule, have been personally served on, or mailed to the last known residence (for an individual defendant) or business address

18

> (for other defendants) of, the party against whom default judgment is sought.
>
> . . .
>
> (c) By the Court (available under Fed. R. Civ. P. 55(b)(2)).  In addition to the matters required in section (a), above, the party must file a statement of damages, sworn or affirmed to by one or more people with personal knowledge, in support of the request, showing the proposed damages and the basis for each element of damages, including interest, attorney's fees, and costs.

Loc. Civ. R. 55.2.

Here, Plaintiff has established compliance with the procedural requirements set forth in Local Civil Rule 55.2(a).  In accordance with Local Civil Rule 55.2(a)(1), Plaintiff has attached the Clerk of Court's certificate of default to its motion.  *Id.* at (a)(1); Dkt. No. 22-4.  Plaintiff is also in compliance with the Servicemembers Civil Relief Act ("SCRA"), which requires a plaintiff seeking default judgment to "file with the court an affidavit stating whether or not the defendant is in military service and showing necessary facts to support the affidavit."  *Windward Bora, LLC v. Ortiz*, No. 21-CV-4154 (MKB) (JMW), 2022 WL 3648622, at *5 (E.D.N.Y. July 5, 2022) (citing 50 U.S.C. § 3931), *report and recommendation adopted*, 2022 WL 3647586 (E.D.N.Y. Aug. 24, 2022).  In a declaration attached to its motion, Plaintiff's counsel declared that Tait is not active in the military, as evidenced by a search of the Department of Defense Manpower Data Center Report attached to the declaration, and also that Tait is not an infant, incompetent, or absentee upon information and belief.  Dkt Nos. 22-1 ¶ 16, 22-7; *see also Weber Cap. LLC v. Racaniello*, 821 F. Supp. 3d 361, 385 (E.D.N.Y. 2026) (adopting report and recommendation, and holding that a printout from this website suffices to demonstrate that an individual defendant was not engaged in military service pursuant to the SCRA).

Moreover, because the other Defaulting Defendants are government agencies or entities and not natural persons, Plaintiff need not demonstrate compliance with the SCRA for those

defendants nor confirm whether they are minors or incompetents. *See Loc. 1992 Pension Fund v. All Serv. Equip. Corp.*, No. 22-CV-2522 (HG) (JMW), 2023 WL 11868244, at *3 (E.D.N.Y. July 28, 2023) (noting that the [SCRA]'s affidavit requirement does not apply to corporate defendants), *report and recommendation adopted,* Text Order, dated Aug. 18, 2023.

Additionally, in compliance with Local Civil Rules 55.2(a)(2) and 7.1(a), Plaintiff filed a notice of motion, a memorandum of law, proposed judgment, and affidavits and exhibits in support of its motion. Loc. Civ. R. 7.1(a); 55.2(a)(2); *see* Dkt. Nos. 22-23. In accordance with Local Civil Rule 55.2(a)(3), Plaintiff personally served each of the Defaulting Defendants copies of the papers filed in connection with its motion. Dkt. No. 27-1; Loc. Civ. R. 55.2(a)(3). Notably, Plaintiff's counsel also attempted to contact Tait by e-mail and phone. *See* Dkt. No. 18.

Further, in accordance with Local Civil Rule 55.2(c), Plaintiff filed sufficient documentation to fulfill Local Civil Rule 55.2(c)'s requirement to "file a statement of damages, sworn or affirmed to by one or more people with personal knowledge, in support of the request, showing the proposed damages and the basis for each element of damages, including interest, attorney's fees, and costs." Loc. Civ. R. 55.2(c). In support of its motion, Plaintiff attaches its declaration requesting attorneys' fees affirmed by Plaintiff's counsel, an affirmed bill of costs, an additional affirmation by Plaintiff's servicer citing to records detailing mortgage payments and taxes, and a proposed foreclosure framework (Dkt. No. 22-20 at 2 – 11). Dkt Nos. 22-1; 22-5; 22-6 22-8; 22-9; 22-19; 22-20.

Accordingly, the undersigned respectfully recommends that the Court find that Plaintiff has satisfied Local Civil Rules 7.1 and 55.2.

**D.    Entry of Default Judgment**

As the Second Circuit has explained,

> Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment. The first step is to obtain an entry of default. When a party against whom affirmative relief is sought has failed to plead or otherwise defend, a plaintiff may bring that fact to the court's attention. In such circumstances Rule 55(a) empowers the clerk of court to enter a default. The next step requires the plaintiff to seek a judgment by default under Rule 55(b). Rule 55(b)(1) allows the clerk to enter a default judgment if the plaintiff's claim is for a sum certain and the defendant has failed to appear. In all other cases Rule 55(b)(2) governs. It requires a party seeking a judgment by default to apply to the court for entry of a default judgment.

*Priestley v. Headminder, Inc.*, 647 F.3d 497, 504-05 (2d Cir. 2011). To "enter or effectuate judgment," a court is empowered to: "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2).

"A threshold question before reaching liability or damages is whether [the defaulting defendant's] conduct is sufficient to warrant default judgment being entered." *Annuity, Pension, Welfare & Training Funds of the Int'l Union of Operating Eng'rs v. NAMOW, Inc.*, No. 17-CV-1469 (ARR) (SJB), 2018 WL 1440545, at *2 (E.D.N.Y. Feb. 28, 2018), *report and recommendation adopted*, 2018 WL 1440542 (E.D.N.Y. Mar. 22, 2018). The Second Circuit "generally disfavor[s]" default judgment and has repeatedly expressed a "preference for resolving disputes on the merits." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95-96 (2d Cir. 1993) (citation omitted). Nevertheless, "in evaluating a motion for default judgment, a court accepts as true the plaintiff's well-pleaded factual allegations, except those relating to damages." *BASF Corp. v. Original Fender Mender, Inc.*, No. 23-CV-2796 (HG) (JAM), 2023 WL 8853704, at *2 (E.D.N.Y. Dec. 22, 2023) (first citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); and then citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)), *report and recommendation adopted*, Text Order, dated Jan. 9, 2024. The plaintiff bears the burden of alleging "*specific* facts," rather than "mere 'labels and conclusions'" or a "formulaic recitation of

21

the elements," so that a court may infer a defendant's liability. *Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-CV-3314 (SJ) (RER), 2015 WL 5561033, at *3 (E.D.N.Y. Sep. 1, 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), *report and recommendation adopted*, 2015 WL 5561180 (E.D.N.Y. Sep. 21, 2015).

The decision to grant or deny a motion for default judgment is "left to the sound discretion of a district court." *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914 (ENV) (MMH), 2023 WL 6338666, at *3 (E.D.N.Y. Sep. 29, 2023) (quoting *Shah v. N.Y. State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999)), *report and recommendation adopted*, Text Order, dated Nov. 30, 2023. A court "possesses significant discretion" in granting such a motion, "including [determining] whether the grounds for default are clearly established." *Chen v. Oceanica Chinese Rest., Inc.*, No. 13-CV-4623 (NGG) (PK), 2023 WL 2583856, at *7 (E.D.N.Y. Mar. 21, 2023) (adopting report and recommendation) (citation omitted). The Court may also "consider numerous factors, including whether a plaintiff has been substantially prejudiced by the delay involved and whether the grounds for default are clearly established or in doubt." *Franco v. Ideal Mortg. Bankers, Ltd.*, No. 07-CV-3956 (JS) (AKT), 2010 WL 3780972, at *2 (E.D.N.Y. Aug. 23, 2010) (citation modified), *report and recommendation adopted*, 2010 WL 3780984 (E.D.N.Y. Sep. 17, 2010).

As the Second Circuit has observed, "[t]hese widely accepted factors are: (1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Enron Oil Corp.*, 10 F.3d at 96 (citations omitted); *see also Trico Tarek Factory v. Jetax Inc.*, Nos. 24-CV-3731 (JMA) (ST), 24-CV-2409 (ST), 2025 WL 2625376, at *29 (E.D.N.Y Sep. 11, 2025) ("Notably, the *Enron* factors are used not only to determine whether to set aside an entry of default or default judgment, but also in deciding whether *granting* a default judgment is warranted in the first instance." (citing *Grp. One Ltd. v. GTE GmbH*,

22

625 F. Supp. 3d 28, 54-61 (E.D.N.Y. 2022))), *report and recommendation adopted*, No. 24-CV-3731 (JMA) (ST), 2025 WL 2782485 (E.D.N.Y. Sep. 30, 2025). "Willfulness 'is the most significant factor' but is not dispositive." *Henry v. Oluwole*, 108 F.4th 45, 52 (2d Cir. 2024) (citations omitted); *see also Grp. One*, 625 F. Supp. 3d at 55 ("However, in neither case did the court find default judgment appropriate based solely on willfulness." (citations omitted)). "Other relevant equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." *Enron Oil Corp.*, 10 F.3d at 96 (citation omitted).

Here, as to the first factor, Defaulting Defendants' failure to respond to the Complaint demonstrates the willfulness of their default. "'[W]illfulness,' in the context of a default, refer[s] to conduct that is more than merely negligent or careless," but is instead "egregious and . . . not satisfactorily explained." *Bricklayers & Allied Craftworkers Loc. 2*, 779 F.3d at 186 (citation omitted). As described above, Defaulting Defendants were properly served with the Complaint. *See* Dkt. Nos. 10–13. Notwithstanding that service, Defaulting Defendants did not respond to the Complaint, did not appear, and have not in any way attempted to defend this action, thus constituting willfulness in the context of default judgment. *See, e.g.*, *Krevat v. Burgers to Go, Inc.*, No. 13-CV-6258 (JS) (AKT), 2014 WL 4638844, at *6 (E.D.N.Y. Sep. 16, 2014) (adopting report and recommendation and holding that defendant's failure to appear demonstrated willfulness of default); *Sola Franchise Corp. v. Solo Salon Studios Inc.*, No. 14-CV-946 (JS) (AKT), 2015 WL 1299259, at *6 (E.D.N.Y. Mar. 23, 2015) (adopting report and recommendation, and holding that "[d]efendant's failure to answer the Complaint and to respond to the instant motion is sufficient to establish willfulness" (citations omitted)). Despite Plaintiff's repeated service of filings throughout this case and attempts at contact, Defaulting Defendants have consistently failed to

respond or appear.  *See* Dkt Nos. 10–13; 15; 17–19; 24–25; 27-1.  Such disregard for the Court

and the present litigation militate in favor of the first factor being satisfied.

As to the second factor, the Second Circuit has held that "[w]hether a defense is meritorious 'is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense.'" *In re Orion HealthCorp*, 95 F.4th 98, 105 (2d Cir. 2024) (quoting *Enron Oil Corp.*, 10 F.3d at 98).  The Court cannot conclude that Defaulting Defendants have a meritorious defense to the allegations in the Complaint because they did not appear in this case to proffer any defenses.  *See Korzeniewski v. Sapa Pho Vietnamese Rest. Inc.*, No. 17-CV-5721 (MKB) (SJB), 2019 WL 312149, at *3 (E.D.N.Y. Jan. 3, 2019) ("[T]he Court cannot conclude there is any meritorious defense to the allegations because [the defendant] did not appear nor present evidence of such a defense."), *report and recommendation adopted*, 2019 WL 291145 (E.D.N.Y. Jan. 23, 2019).  This factor therefore weighs in favor of entering default judgment because the allegations in the Complaint are deemed admitted.  *See BASF Corp.*, 2023 WL 8853704, at *2 (citations omitted); *see also Sola Franchise Corp.*, 2015 WL 1299259, at *6 ("Here, Defendant has not interposed an answer, nor has it otherwise presented any defense to the Court. These factors weigh in favor of granting a default judgment, and the allegations in Plaintiffs' Complaint are deemed admitted." (citation omitted)).

As to the third factor, the Second Circuit has held that "delay alone is not a sufficient basis for establishing prejudice.  Rather, it must be shown that delay will result in the loss of evidence, create increased difficulties of discovery or provide greater opportunity for fraud and collusion." *Henry*, 108 F.4th at 52-53 (citation omitted).  Here, Plaintiff will suffer prejudice if its motion is denied because without the entry of default judgment, Plaintiff could be left without the ability to recover against Defaulting Defendants for the claims set forth in the Complaint.  *See Grp. One*,

24

625 F. Supp. 3d at 60 ("Plaintiff will suffer prejudice if its motion is denied because Plaintiff will be unable to recover against Defendants for the claims adequately set forth in its Amended Complaint." (citations omitted)); *Sola Franchise Corp.*, 2015 WL 1299259, at *15 ("denying this motion would be prejudicial to [p]laintiffs 'as there are no additional steps available to secure relief in this Court'" (citation omitted)).

Therefore, the undersigned respectfully recommends that all three factors permit entry of a default judgment against Defaulting Defendants. The Court thus turns to evaluating liability and damages.

### E.    Pre-Foreclosure Requirements

As United States Magistrate Judge James R. Cho eloquently explained in *Tacoaman*,

> Article 13 of the RPAPL provides for certain requirements that must be complied with in a foreclosure action, even in federal court. *See, e.g., Windward Bora LLC v. Durkovic as Tr. of McQueen Fam. Tr.*, No. 22-CV-411 (MKB), 2024 WL 3455841, at *4-5 (E.D.N.Y. July 18, 2024)[.] Section 1303 requires the plaintiff to serve a specific notice on the defendant, with the summons and complaint. *See* RPAPL § 1303. Section 1304 requires that plaintiff serve an additional notice at least ninety days before commencing a foreclosure action. *See id.* § 1304(1). That notice must be sent "by registered or certified mail and also by first-class mail to the last known address of the borrower, and to the residence that is the subject of the mortgage." *Id.* § 1304(2). RPAPL § 1306 requires that plaintiff file certain information with the Superintendent of Financial Services, within three business days of mailing the notice required by section 1304. *See* RPAPL § 1306. Plaintiff is also required to serve a special summons once the foreclosure action is filed. *See* RPAPL § 1320. Finally, RPAPL § 1331 requires that plaintiff file a notice of pendency of the action, as well as a copy of the complaint, in the clerk's office of the county where the subject property is located. *See* RPAPL §§ 1331, 6511(a) ("Unless it has already been filed in that county, the complaint shall be filed with the notice of pendency.").

*Tacoaman*, 2026 WL 498199, at *5.

Here, Plaintiff has complied with the pre-foreclosure statutory requirements. *See* Dkt. No. 29. First, Plaintiff filed a copy of the RPAPL § 1303 notice served on Tait. Dkt. Nos. 27-5; 27-6. Second, Plaintiff provided a copy of the required special summons and proof of service pursuant

to RPAPL § 1320.  Dkt. Nos. 27-7; 27-8.  Third, Plaintiff provided proof that the notice of pendency was filed with a copy of the summons and complaint in Kings County pursuant to RPAPL § 1331 and CPLR § 6511(a).  Dkt. Nos. 26, 27-4.  Finally, Plaintiff provided a certificate of merit.  Dkt. No. 27-9.

Accordingly, the undersigned respectfully recommends a finding that Plaintiff has demonstrated compliance with New York's statutory pre-foreclosure requirements.

### F.    Foreclosure Actions

"Under New York law, a mortgage is merely security for a debt or other obligation." *Deutsche Bank Nat'l Tr. Co. v. Nickle ("Nickle")*, No. 24-CV-7889 (NCM) (PCG), 2026 WL 788108, at *5 (E.D.N.Y. Feb. 13, 2026), *report and recommendation adopted*, 2026 WL 788011 (E.D.N.Y. Mar. 20, 2026) (citations omitted).  To foreclose on a mortgage, a plaintiff must demonstrate (1) the existence of a mortgage; (2) ownership of the mortgage; and (3) the defendant's default in payment of the loan.  *Sec'y of U.S. Dep't of Hous. & Urb. Dev. v. Kings Cnty. Pub. Admin.*, No. 22-CV-7925 (FB) (RER), 2023 WL 7169000, at *3 (E.D.N.Y. Sep. 13, 2023) (internal quotation marks and citation omitted), *report and recommendation adopted*, 2023 WL 7167515 (E.D.N.Y. Oct. 31, 2023).  "Once the plaintiff submits the mortgage, the unpaid note, and evidence of the default, it has satisfied its *prima facie* entitlement to judgment, . . . and the burden shifts to the defendant to demonstrate that there is a triable issue of fact with respect to the merits of the defenses and/or counterclaims."  *Nickle*, 2026 WL 788108, at *5 (internal citations omitted).

#### i.    Foreclosure against Tait

Plaintiff has established that Tait defaulted by failing to make the required payments due since October 1, 2024. Dkt Nos. 22-1 ¶¶ 7-9; 22-9 ¶¶ 8-12; 22-19.  First, Plaintiff has established

26

its *prima facie* entitlement to default judgment.  Plaintiff has provided an existing mortgage assigned to the Plaintiff and an unpaid note.  *See* Dkt. Nos. 22-12, 22-13.  The Note, Mortgage, and accompanying documents establish the existence of a debt owed by the borrower to Plaintiff. *See Wilmington Sav. Fund Soc'y, FSB as Tr. for Carlsbad Funding Mortg. Tr. v. White*, No. 17-CV-2288 (AMD) (JMW), 2022 WL 5432771, at *8 (E.D.N.Y. July 27, 2022) (finding plaintiff had the right to enforce the mortgage when it had demonstrated possession of the note and mortgage prior to the commencement of the instant action), *report and recommendation adopted as modified*, 2022 WL 4235326 (E.D.N.Y. Sep. 14, 2022); *Gustavia Home, LLC v. Bent*, 321 F. Supp. 3d 409, 415 (E.D.N.Y. 2018) (finding that affidavit stating that "defendant . . . failed to cure the default" was sufficient proof of borrower's default).

To date, Tait has not appeared or moved to vacate the entry of default.  Dkt. No. 22-4. Thus, Tait has failed to rebut Plaintiff's *prima facie* entitlement to foreclosure.  *See Nickle*, 2026 WL 788108, at *6 ("The allegations in the Complaint, which establish the existence of the mortgage held by plaintiff, along with the unpaid note, and evidence of the default, are sufficient to satisfy plaintiff's prima facie entitlement to judgment."); *Kings Cnty. Pub. Admin.*, 2023 WL 7169000, at *3; *Sec'y of U.S. Dep't of Hous. & Urb. Dev. v. Nassau Cnty. Pub. Admin. as Admin. of the Est. of Ella Mae Key, Deceased*, No. 19-CV-03547 (DLI) (SJB), 2023 WL 2421676, at *3-4, 7 (E.D.N.Y. Feb. 9, 2023) (recommending entry of default when plaintiff established *prima facie* entitlement to foreclosure by producing mortgage, note, and proof of default and defendants failed to appear), *report and recommendation adopted*, Text Order, dated Mar. 8, 2023.

Given Tait's continued failure to participate in this action, there is "no compelling reason to delay further[.]"  *Nickle*, 2026 WL 788108, at *6.  The undersigned therefore respectfully

27

recommends that the Court grant Plaintiff's motion for default judgment of foreclosure against Tait.

### ii.    Liability of Subordinate Lienholders

RPAPL § 1311 requires that the necessary parties to a mortgage foreclosure action include every person having a lien or incumbrance upon the real property claimed to be subject and subordinate to the lien of the plaintiff.  RPAPL § 1311(3).  The rationale for this rule "derives from the underlying objective of foreclosure actions—to extinguish the rights of redemption of all those who have a subordinate interest in the property and to vest complete title in the purchaser at the judicial sale." *Bank of Am., N.A. v. 3301 Atl., LLC*, No. 10-CV-5204 (FB) (SMG), 2012 WL 2529196, at *14 (E.D.N.Y. June 29, 2012) (internal citation and quotation marks omitted).  Courts in this district have routinely held that entry of a default judgment under Fed. R. Civ. P. 55 is appropriate where the complaint alleges "nominal liability—i.e., that any judgments the Defaulting Defendants may have against [the debtor], if liens on the mortgaged property are subordinate to [plaintiff's] lien." *Id.* (internal citation and quotation marks omitted); *see also Kings Cnty. Pub. Admin.*, 2023 WL 7169000, at *3, *report and recommendation adopted*; *OneWest Bank, NA v. Raghunath*, No. 14-CV-3310 (RJD) (MDG), 2015 WL 5772272, at *7 (E.D.N.Y. Sep. 8, 2015), *report and recommendation adopted sub nom.*, 2015 WL 5774784 (E.D.N.Y. Sep. 29, 2015).

Plaintiff names Defendants DOTF, ECB, and PVB as subordinate lienholders.  Dkt. Nos. 1 ¶¶ 4-6, 26 ¶ 2.  And Plaintiff has properly served Defendants DOTF, ECB, and PVB with the Summons and Complaint as well as the relevant documents in the motion for default judgment. *See* Dkt. Nos. 9–10; 15; 29-1.  Defendants DOTF, ECB, and PVB have not appeared or challenged the claim that their interests are subordinate to Plaintiff's.  Dkt No. 22-4.  But the inquiry does not end there.

28

The "RPAPL imposes a heightened pleading standard 'where a state or city agency is named as a defendant.'" *Nickle*, 2026 WL 788108, at *6 (citation omitted). "In those instances, the complaint 'must allege 'detailed facts showing the particular nature of the interest in or lien on the real property and the reason for making the state or city agency a party-defendant.'" *Id.* (alterations in original) (quoting RPAPL §§ 202(1), 202-a(1)). "If the lien exists 'by virtue of a judgment,' and the defendant is a state agency, the complaint must include 'the name of the court, date recorded, clerk's office in which filed, and names of the parties against whom and in whose favor the judgment was recorded.'" *Id.* (alteration omitted) (quoting RPAPL § 202(2)). "If the defendant is a city agency, the complaint must include that same information, as well as 'a brief description of the grounds for or the nature of such judgment.'" *Id.* (quoting RPAPL § 202-a(2)).

Here, Plaintiff has shown that the lien for DOTF exists by virtue of judgments dated August 10, 2020 and November 24, 2020, respectively, in the Kings County Clerk's Office against debtor Tait. *See* Dkt. No. 1-2. Similarly, Plaintiff has shown that the judgment liens docketed in the Kings County Clerk's Office in 2017 and 2018 with respect to ECB (Dkt. No. 1-3) and PVB (Dkt. No. 1-4) exist against debtor Tait. *See also* Dkt. No. 1 ¶¶ 3-6. Thus, Plaintiff has complied with RPAPL § 202-a's heightened standard for DOTF, ECB, and PVB. Because Plaintiff "has established the existence of these judgments by submitting evidentiary documentation demonstrating the lien holders' interests in the property, there is sufficient evidence to find that" DOTF, ECB, and PVB "are necessary parties in this matter. *Tacoaman*, 2026 WL 498199, at *7; *see also Freedom Mortg. Corp. v. McLain*, No. 23-CV-1309 (FB) (LB), 2023 WL 8473948, at *3 (E.D.N.Y. Oct. 12, 2023) (recommending granting default judgment based on documents demonstrating defendant's interest in the subject property), *report and recommendation adopted*, 2023 WL 7320257 (E.D.N.Y. Nov. 7, 2023); *CIT Bank, N.A. v. McDonnell*, No. 18-CV-476 (CBA)

29

(SJB), 2023 WL 2361381, at *9 (E.D.N.Y. Feb. 2, 2023) (recommending granting default judgment against nominal defendants alleged to have liens subordinate to plaintiff), *report and recommendation adopted*, Dkt. No. 88 (Order), dated Mar. 3, 2023; *Courchevel 1850 LLC v. Donaldson*, No. 16-CV-6803 (RRM) (CLP), 2018 WL 1830809, at *5 (E.D.N.Y. Feb. 1, 2018) (recommending granting default judgments against the DOTF, ECB, and PVB), *report and recommendation adopted*, 2018 WL 5777018 (E.D.N.Y. Nov. 1, 2018).

The undersigned therefore respectfully recommends that the Court enter default judgment against DOTF, ECB, and PVB.

### G.    Dismissal of the John Doe Defendants

Plaintiff originally named the John Doe Defendants to represent "potential new lienholders, judgment creditors, [and] other parties with an interest in the mortgaged premises." Dkt. No. 18 at 1 n.1. But, as Plaintiff now acknowledges, because the John Doe Defendants were never "identified or served," Plaintiff "intends on discontinuing the action as against these John Doe [D]efendants." *Id.*

The undersigned therefore respectfully recommends that the John Doe Defendants be dismissed from this action.

### H.    Damages

While allegations concerning liability are deemed admitted upon entry of default, allegations relating to damages are not. *See Greyhound Exhibitgroup*, 973 F.2d at 158; *see also Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (internal citations omitted). Rather, a court must ensure that there is an evidentiary basis for the damages sought by a plaintiff before entering judgment in the requested amount. *See Fustok v.*

*ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989).  A court may make this determination based upon review of detailed affidavits and documentary evidence.  *See* Fed. R. Civ. P. 55(b)(2); *Id.* (noting that a court "may rely on detailed affidavits and documentary evidence" as the basis for determining damages awarded in a default judgment).

### i.    Unpaid and Deferred Principal

Plaintiff requests recovery of an unpaid principal balance of $232,202.25 and a deferred principal balance of $41,238.24.  *See* Dkt. No. 1 ¶ 17; Dkt. No. 22-9 ¶ 12.  As set forth in the declaration of PHH Contract Management Coordinator Claribel Lopez, as well as in documents annexed to Ms. Lopez's declaration (including Plaintiff's account history), Tait failed to make payments on the unpaid principal balance of $232,202.25 and a deferred principal balance of $41,238.24 as of July 22, 2025.  Dkt. Nos. 22-9; 22-19.  By failing to make payments when due, Tait breached his obligation under the Note and Mortgage.  *Id*.

The undersigned finds that Ms. Lopez's affidavit and its attachments are sufficient to establish evidence of damages, and accordingly recommends awarding Plaintiff $232,202.25 for the unpaid principal balance and $41,238.24 for the deferred principal balance.  *See HSBC Bank USA, Nat'l Ass'n, as Tr. for Deutsche Alt-A Sec. Mortg. Loan Tr. v. Fenelon*, No. 24-CV-7716 (OEM) (LGD), 2025 WL 3546115, at *8 (E.D.N.Y. Dec. 9, 2025) (finding materials submitted in affidavit sufficient evidence to establish damages), *report and recommendation adopted*, Text Order, dated Jan. 5, 2026; *see also Durkovic,* 2024 WL 3455841, at *4-5 (finding plaintiff's evidence from reports and account statements sufficient to prove damages); *Nickle*, 2026 WL 788108, at *9 (finding papers submitted sufficient to support Plaintiff's damage calculations).

31

### ii.    Pre-Judgment Interest

Plaintiff also requests interest on the interest-bearing portion of the unpaid principal balance from September 1, 2024 to July 22, 2025.  *See* Dkt No. 22-9 ¶ 12.  Pursuant to the terms of the Note, as modified, Defendant was to make monthly payments of both principal and interest pursuant to the Note and the Loan Modification Agreement.  *See* Dkt. Nos. 22-12, 22-14.  The terms of the Loan Modification Agreement provide that interest accrues on the "New Principal Balance as of [September 1, 2011]" at a rate of 4.75% per year, or $30.22 per day.  *See* Dkt. No. 22-14 at 7.  Plaintiff is thus entitled to pre-judgment interest in the amount of $30.22 per day from September 1, 2024 until judgment is entered.  *See Windward Bora, LLC v. Brown*, No. 21-CV-3147 (KAM) (RER), 2022 WL 875100, at *5 (E.D.N.Y. Mar. 24, 2022) (awarding per diem, pre-judgment interest from August 13, 2021 where plaintiff had calculated amount of alleged interest due through August 12, 2021); *Nickle*, 2026 WL 788108, at *9 ("Plaintiff is entitled to per diem pre-judgment interest in the amount of $50.88.").

Accordingly, based on the Court's calculations, the undersigned respectfully recommends awarding Plaintiff $9,820.88[8] in pre-judgment interest from September 1, 2024 to July 22, 2025 ($30.22 x 325 days), plus additional interest at the rate of $30.22 per day from July 22, 2025 until the entry of judgment.  *See, e.g.*, *CIT Bank, N.A., v. Schiffman*, 16-CV-5772 (DLI) (RML), 2022 WL 1085419, at *3 (E.D.N.Y. Feb. 16, 2022) (awarding unpaid principal and interest), *report and recommendation adopted*, 2022 WL 912520, at *3 (E.D.N.Y. Mar. 29, 2022), *aff'd* 2026 WL 761669 (2d Cir. 2026).

---

[8] While Plaintiff requests $9,825.88 in interest (*see* Dkt. No. 22-9), the Court finds that the correct amount owed on the unpaid principal balance is $9,820.88.  This calculation is based on the unpaid principal balance of $232,202.25, multiplied by an annual interest rate of 4.75% for 365 days.

### iii.    Post-Judgment Interest

A plaintiff is also entitled to an award of post-judgment interest on damage awards issued by a district court pursuant to 28 U.S.C. § 1961(a).  *See Schipani v. McLeod*, 541 F.3d 158, 165 (2d Cir. 2008); *see also Nickle*, 2026 WL 788108, at *9 (citing *Schipani*, 541 F.3d at 165).  Under 28 U.S.C. § 1961(a), "interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding."  *Windward Bora LLC v. Sterling*, No. 18-CV-1727 (DRH) (SIL), 2018 WL 5839797, at *5 (E.D.N.Y. Nov. 8, 2018) (quoting 28 U.S.C. § 1961(a)), *report and recommendation adopted*, 2018 WL 6706311 (E.D.N.Y. Dec. 19, 2018).

Thus, the undersigned also respectfully recommends that Plaintiff be awarded post-judgment interest at the federal statutory rate from the date judgment is entered until it is paid.  *See Brown*, 2022 WL 875100, at *6 (awarding post-judgment interest pursuant to 28 U.S.C. § 1961(a) in granting motion for default judgment of foreclosure and sale).

### iv.    Escrow Advances, Taxes, Insurance, Property Inspection Fees, and Property Valuation Fees

Plaintiff also seeks to recover escrow advances totaling $72,497.91, consisting of $120,635.60 in taxes, $9,034.85 in insurance, and $10,101.27 balance in prior servicer escrow, with a deduction of $67,273.81 in escrow payments and credits.  Dkt No. 22-9 at 12.  Additionally, Plaintiff seeks to $150.00 in property inspections and a $85.00 property valuation fee.  *Id*.  The Mortgage provides that "[Plaintiff] will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law" in any lawsuit for foreclosure and sale and that Tait "will also pay all amounts for Escrow Items" as well as "taxes, assessments," "premiums for any and all insurance," and further that "[Plaintiff] may obtain insurance coverage, at [Plaintiff]'s

33

option and [Tait]'s expense." Dkt. Nos. 22-6 ¶ 4; 22-13 ¶¶ 1, 3, 5, 22.  The Mortgage also provides that "[Plaintiff] may charge [Tait] fees for services performed in connection with [Tait]'s default… including, but not limited to, property inspection and valuation fees."  Dkt Nos. 22-6 ¶ 3; 22-13 ¶ 14.

As described above, the terms of the Mortgage permit Plaintiff to obtain insurance, escrow advances, taxes, and other costs incurred in relation to the Property.  *Id*. at ¶¶ 1, 3, 5, 14, 22.  When costs are corroborated by a declaration and relevant business records, other courts have awarded such costs.  *See ARCPE Holding, LLC v. 9Q4U5E LLC*, No. 19-CV-6417 (DLI) (RER), 2022 WL 2467085, at *4 (E.D.N.Y. Apr. 15, 2022), *report and recommendation adopted*, Text Order, dated May 12, 2022; *First Trade Union Bank v. Formerly 8th St. LLC,* No. 10-CV-5284 (RRM) (RML), 2011 WL 3877097, at *3 (E.D.N.Y. Aug. 5, 2011), *report and recommendation adopted*, 2011 WL 3877077 at *1 (E.D.N.Y. Aug. 31, 2011).  Plaintiff provides a detailed itemized history of charges that includes mortgage payments with escrow credits applied and various insurance payments.  Dkt. No. 22-19.  Plaintiff also lists accumulating property inspection and property valuation fees amounting to $150.00 and $85.00.  *Id*.  Thus, Plaintiff has sufficiently demonstrated that it is entitled to recover the cost of insurance and taxes related to the Property totaling $72,497.91 and property inspection and property valuation fees of $150.00 and $85.00, respectively.  *Tacoaman*, 2026 WL 498199, at *9 (recommending the award of escrow advances "since plaintiff has corroborated its request for these costs with a declaration and the relevant business records").

Accordingly, the undersigned respectfully recommends that Plaintiff's motion for damages be granted with respect to the escrow advances, taxes, insurance, and property inspection and valuation fees.

34

## I.    Attorneys' Fees and Costs

Plaintiff seeks attorneys' fees in the amount of $6,800.00. *See* Dkt. No. 22-20. A plaintiff in a foreclosure action may recover attorneys' fees and costs against a borrower-defendant if the note or mortgage provides for such an award. *U.S. Bank Nat'l Ass'n as Tr. for RMAC Tr., Series 2016-CTT v. Swezey*, No. 20-CV-91 (FB) (RLM), 2022 WL 1422841 (E.D.N.Y. Mar. 24, 2022), *report and recommendation adopted*, 2022 WL 2390989 (E.D.N.Y. July 1, 2022). The Mortgage provides that "[Plaintiff] may charge [Tait] fees for services performed in connection with [his] default . . . under this Security Instrument, including, but not limited to, attorneys' fees…" and in "any lawsuit for Foreclosure and Sale, [Plaintiff] will have the right to collect all costs and disbursements and additional allowances allowed . . . and will have the right to add all reasonable attorneys' fees to the amount [Tait] owe[s] [Plaintiff], which fees shall become part of the [s]ums [secured]." Dkt. Nos. 23; 22-13 ¶¶ 14, 22.

In the Second Circuit, the amount of attorneys' fees awarded to a prevailing party is determined by calculating the "presumptively reasonable fee" based on the "hourly rates employed in the district in which the reviewing court sits." *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009). Plaintiff's counsel, however, argues that counsel "is paid a flat fee of $6,800 from its client for each foreclosure action handled." Dkt. No. 22-6 ¶ 9.

"In general, courts in this Circuit will not award attorney's fees assessed at a flat-rate unless the supporting documentation is detailed enough to satisfy the Second Circuit's requirement that attorneys' fees must be based on contemporaneous time records specifying relevant dates, time spent and work done." *United States v. Basile*, No. 19-CV-7022 (JS) (ARL), 2023 WL 5152519, at *4 (E.D.N.Y. June 27, 2023) (internal quotation marks and citations omitted), *report and recommendation adopted*, 2023 WL 5525096 (E.D.N.Y. Aug. 28, 2023). In similar cases in this

35

district, courts have reduced counsel's fee by 50 percent of the requested amount based on the record and declaration provided. *See Wells Fargo Bank, N.A., as Tr. for Option One Mortg. Loan Tr. 2006-1, Asset-Backed Certificates, Series 2006-1 v. Drepaul*, 25-CV-2185 (DG) (RML), 2026 WL 1080004 at *5 (Feb. 17, 2026) (awarding 50 percent reduction in fees to same counsel), *report and recommendation adopted*, Text Order, dated Mar. 11, 2026; *McLain*, 2023 WL 8473948, at *8 (recommending a 50 percent reduction in award when plaintiff's counsel charged a flat fee); *see also Freedom Mortg. Corp. v. Rich*, No. 22-CV-4827 (DLI) (ST), 2024 WL 4250330, at *7 (E.D.N.Y. Mar. 8, 2024) (recommending a 64 percent reduction from the requested amount when plaintiff's counsel charged a flat fee), *report and recommendation adopted*, Text Order, dated Mar. 26, 2024.

Notwithstanding the lack of detailed time records, Plaintiff has provided an adequate estimate of the hours worked on this matter. Dkt No. 22-6 at 6-7; *see Nationstar Mortg. LLC v. Mullany*, No. 16-CV-5501 (ADS) (AYS), 2018 WL 4658437, at *6 (E.D.N.Y. Sep. 11, 2018) (awarding attorney's fees based on work described in counsel's affirmation), *report and recommendation adopted*, 2018 WL 4637352 (E.D.N.Y. Sep. 27, 2018); *but see Basile*, 2023 WL 5152519, at *4 (denying attorney's fees when hourly rates were not specified and no estimations were provided). Plaintiff's counsel estimates that approximately 40 total hours were expended on this case, totaling $6,875.00 in actual fees, including the estimated amount of time needed to conclude the matter. *Id.* Plaintiff counsel's $6,800 flat fee is intended to "encompass[] all work performed on a file except for in person court appearances and contested work, for which counsel is paid hourly." *Id.* at 3. Plaintiff's counsel also indicates that their firm's usual hourly rate performed in residential mortgage foreclosure cases is $330.00 per hour for attorneys and $100.00 per hour for paralegals, which are consistent with approved rate for Plaintiff's counsel's requests

in this district. *Id.*, *see also Nickle*, 2026 WL 788108, at *11 ("The Court finds that [counsel's] rates are consistent with reasonable hourly rates in this district.").

Accordingly, the undersigned respectfully recommends that Plaintiff's attorneys' fee request be reduced by 50 percent to $3,400, which is consistent with a recent award for the same counsel based on a comparable fee schedule and flat fee engagement. *See, e.g.*, *Tacoaman*, 2026 WL 498199, at *10; *see also Drepaul*, 2026 WL 1080004 at *5 (collecting cases).

Plaintiff also seeks an additional $2,021.50 for costs in this action, which consist of $405 filing fee $417.50 for title search, and $1,199 for service of process. *See* Dkt. No. 22-5 (providing invoice for service of process, email containing payment confirmation for filing fee, and an invoice for title search). As discussed above, the Mortgage provides that Plaintiff may "collect all costs and disbursements" in a foreclosure action. Dkt No. 22-13 ¶ 22. "[A] court will generally award 'those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'" *Saleh v. Pretty Girl, Inc.*, No. 09-CV-1769 (RER), 2022 WL 4078150, at *35 (E.D.N.Y. Sep. 6, 2022) (citation omitted); *see also Onewest Bank, N.A. v. Cole*, No. 14-CV-3078 (FB) (RER), 2016 WL 11395013, at *6 (E.D.N.Y. Jan. 19, 2016) (noting that "[r]easonable and identifiable out-of-pocket disbursements ordinarily charged to clients are recoverable" (citing *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998))), *report and recommendation adopted*, 2016 WL 1069951 (E.D.N.Y. Mar. 18, 2016). The filing fee, title search fees, and service of process fees are reasonable. *See Tacoaman*, 2026 WL 498199, at *10 (recommending such costs as reasonable).

Based upon the adequate documentation provided, the undersigned respectfully recommends awarding $2,021.50 for costs and disbursements. *Rich*, 2024 WL 4250330, at *8

37

(awarding requested amount for costs and disbursements associated with filing the foreclosure action); *see McLain*, 2023 WL 8473948, at *8.

### J.    Judgment of Foreclosure and Sale and Appointment of Referee

Plaintiff requests a judgment of foreclosure and sale and appointment of a referee to conduct a foreclosure auction of the Property pursuant to RPAPL § 1351(1).  Dkt. No. 22.  A plaintiff is entitled to foreclose upon and auction a property if it demonstrates "the existence of an obligation secured by a mortgage, and a default on that obligation."  *1st Bridge LLC v. 682 Jamaica Ave., LLC*, No. 08-CV-3401 (NGG) (MDG), 2010 WL 4608326, at *3 (E.D.N.Y. July 13, 2010) (internal quotation marks and citations omitted), *report and recommendation adopted*, 2010 WL 4607409 (E.D.N.Y. Nov. 4, 2010); *see also Cole*, 2016 WL 11395013, at *6 (authorizing foreclosure and sale of property upon entry of default judgment).  Additionally, courts routinely appoint referees to effectuate the sale of foreclosed properties where the plaintiff has established a *prima facie* entitlement to foreclosure.  *See, e.g.*, *Fenelon*, 2025 WL 3546115, at *9 (E.D.N.Y. Dec. 9, 2025) (recommending appointment of referee); *McLain*, 2023 WL 8473948, at *3 (same); *Freedom Mortg. Corp. v. King*, No. 19-CV-4833 (NGG) (LB), 2020 WL 9813020, at *3 (E.D.N.Y. Apr. 28, 2010) (same), *report and recommendation adopted in part*, 2023 WL 3494738 (E.D.N.Y. May 17, 2023); *Raghunath*, 2015 WL 5772272, at *7 (same).

As discussed above, Plaintiff has established its presumptive right to foreclose upon the Property due to Tait's default.  Specifically, the undersigned respectfully recommends the appointment of Scott Siller, Esq., as a referee to conduct a foreclosure auction of the Property under the terms set forth in the proposed Judgment and Foreclosure of Sale, filed at Dkt. No. 22-20.  *See Tacoaman* 2026 WL 498199, at *11 (recommending the appointment of Mr. Siller as a referee).

38

## III.   **Conclusion**

For the foregoing reasons, the undersigned respectfully recommends that Plaintiff's motion for default judgment as against Defaulting Defendants be granted in part and denied in part, to wit:

(1) $232,202.25 in unpaid principal;

(2) $41,238.24 in deferred principal;

(3) $9,820.88 in pre-judgment interest from September 1, 2024 through July 22, 2025, plus additional interest at the rate of $30.22 per day from July 22, 2025 until the entry of judgment;

(4) Plaintiff be awarded post-judgment interest at the federal statutory rate under 28 U.S.C. § 1961(a) from the date judgment is entered until it is paid;

(5) $72,497.91 in escrow advances and $235.00 in disbursements (property inspection and valuation costs); and

(6) $3,400.00 in attorneys' fees and $2,021.50 in costs incurred by the Plaintiff.

The undersigned further recommends that the claims brought against John Does #1-12 be dismissed and that the caption be amended to reflect the dismissal.

A copy of this Report and Recommendation is being electronically served on counsel. Plaintiff's counsel is directed to serve a copy of this Report and Recommendation on Defaulting Defendants by overnight mail and first-class mail, and file proof of service on ECF by June 26, 2026.  Copies shall be served at the following addresses:

Rohan Tait A/K/A Rohan O. Tait
2169 Strauss Street
Brooklyn, NY 11212

New York State Department of Taxation and Finance
W.A. Harriman Campus, Building 9
Albany, NY 12227

New York City Environmental Control Board
100 Church Street, 4th Flr.
New York, NY 10007

New York City Parking Violations Bureau
100 Church Street, 4th Flr.
New York, NY 10007

Any objections to this Report and Recommendation must be filed within fourteen (14) days after service of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a), (d) (addressing computation of days). Any requests for an extension of time for filing objections must be directed to Judge Vitaliano. The "failure to object timely to a [magistrate judge]'s report operates as a waiver of any further judicial review of the [magistrate judge]'s decision." *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) (quoting *Small v. Sec'y of Health & Hum. Servs.*, 892 F.2d 15, 16 (2d. Cir. 1989)). Indeed, "a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point." *Stevens v. Duquette*, No. 22-1571, 2024 WL 705954, at *1 (2d Cir. Feb. 21, 2024) (quoting *Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003)). Accordingly, the failure to file objections within this timeframe or specify the particular issues to be reviewed precludes further review of this Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Frego v. Kelsick*, 690 F. App'x 706, 709 (2d Cir. 2017) (appellate review barred because plaintiff failed to object to the magistrate judge's report and recommendation pertaining to the claim on which plaintiff now seeks to appeal (citing *Caidor*, 517 F.3d at 604)).

Dated:     Brooklyn, New York             **SO ORDERED.**
           June 25, 2026

                                          _/s/ Joseph A. Marutollo_
                                          JOSEPH A. MARUTOLLO
                                          United States Magistrate Judge